**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 2, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

FRANCISCO JERARD HOUSE, SR.,

    Defendant - Appellant.

No. 25-6035
(D.C. No. 5:24-CR-00335-JD-1)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **McHUGH**, **MORITZ**, and **CARSON**, Circuit Judges.

Defendant Francisco House, Sr., pleaded guilty to one count of being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1), and was sentenced to a term of imprisonment of thirty-six months. House now appeals, arguing that his sentence is both procedurally and substantively unreasonable. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we conclude that House waived

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

any challenge to the procedural reasonableness of his sentence as part of his written plea agreement, and that his substantive reasonableness challenge lacks merit.

I

In March 2024, the Oklahoma City Police Department (OCPD) received a report that House had sexually assaulted a woman, C.Y., at her place of business and had openly displayed a firearm prior to and during the assault.  Later that same month, OCPD officers executed a search warrant at House's residence in Oklahoma City.  During the search, officers discovered a black handgun magazine that contained eleven live rounds, as well as a box of ammunition that contained fourteen live rounds.  The officers also searched House's vehicle and discovered a black Taurus G2C 9mm handgun that contained twelve live rounds.  After the search, the officers arrested House.

II

House was charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and with being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1). He entered into a written plea agreement with the government under which he agreed to plead guilty to both counts.  As discussed below, the plea agreement also contained an appeal waiver provision.

The presentence investigation report (PSR) calculated a total offense level of 12 (base offense level of 14 minus a 2 level reduction for acceptance of responsibility), a criminal history score of zero, a criminal history category of I, and an advisory guideline imprisonment range of 10 to 16 months.

Notwithstanding House's criminal history score and category, the government sought an upward variance. In support, the government cited the violent nature of House's criminal history and the fact that three protective orders were issued against him following incidents of intimate partner violence.  The government argued that this record established that House was "a violent, dangerous offender—one that warrants a sentence above the calculated guidelines range."  Supp. App. at 33.

At the sentencing hearing, the district court adopted the PSR's calculation of House's total offense level, criminal history score and category, and the advisory guidelines sentencing range. But the court concluded the advisory guidelines range was "inadequate to reflect a sufficient sentence in this case," primarily because [House's] criminal history category underrepresent[ed] [his] risk of recidivism and risk to the public." *Id.* at 110.  The district court therefore granted the government's motion for an upward variance and sentenced House to a term of imprisonment of 36 months.

House appeals.

<div align="center">III</div>

<div align="center">*A. Procedural reasonableness challenge*</div>

House argues that his sentence was procedurally unreasonable because the district court, in determining the length of his sentence, relied in part on unreliable hearsay evidence concerning prior protective orders that were issued against him.

The government counters, and we agree, that House is barred from raising this issue by the plea agreement's appeal waiver provision.  We will enforce an appeal

waiver if (1) "the disputed appeal falls within the scope of the waiver," (2) "the defendant knowingly and voluntarily waived his appellate rights," and (3) enforcing the appeal waiver would not "result in a miscarriage of justice." *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc).

In the plea agreement, House waived "the right to appeal [his] sentence . . . and the manner in which the sentence is determined, including its procedural reasonableness." Supp. App. at 14–15. House's challenge to the procedural reasonableness of his sentence unquestionably falls within the scope of this language. As for the second and third prongs of the *Hahn* test, House makes no attempt to challenge the legitimacy of his appellate waiver or to persuade us that enforcing the waiver would result in a miscarriage of justice. Indeed, he doesn't acknowledge the waiver at all in his opening brief. For these reasons, we decline to consider House's challenge to the procedural reasonableness of his sentence.

## B. *Substantive reasonableness challenge*

House also challenges the substantive reasonableness of his sentence. "We review a district court's sentencing decision for substantive reasonableness under an abuse-of-discretion standard, looking at the totality of the circumstances." *United States v. Guevara-Lopez*, 147 F.4th 1174, 1183 (10th Cir. 2025) (internal quotation marks omitted). "A district court abuses its discretion when it renders a judgment that is arbitrary, capricious, whimsical, or manifestly unreasonable." *Id.* at 1184 (internal quotation marks omitted).

4

"We apply this standard with substantial deference to the district court." *Id.* (internal quotation marks omitted). "That deference derives from the district court's superior position to find facts and judge their import under [18 U.S.C.] § 3553(a) in the individual case." *Id.* (internal quotation marks omitted). "We do not apply a presumption of unreasonableness to sentences outside the guidelines range." *Id.* (internal quotation marks omitted).

That said, we do not simply "provide a rubber stamp of approval to the lower court's sentence." *Id.* (internal quotation marks omitted). Instead, when a district court imposes an upward variance, "we must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.* (internal quotation marks omitted). The greater the degree of variance from the advisory guideline range, the more significant the justification should be. *See id.* "A district court properly engages in the required holistic inquiry of the § 3553(a) factors when it bases its decision on specific, articulable facts supporting the variance and does not employ an impermissible methodology or rely on facts that would make the decision out of bounds." *Id.* (internal quotation marks omitted).

In calculating House's advisory guideline sentencing range, the district court determined that House's criminal history score was zero and that his criminal history category was I. Although House had prior felony convictions, those occurred long enough before the offense of conviction that they did not result in any criminal history points. *See* U.S.S.G. § 4A1.2(e). But, in deciding the length of the sentence to impose, the district court concluded that House's low criminal history score and

5

category "underrepresent[ed] [House's] risk of recidivism and [his] risk to the

public." Aplt. App. vol. III at 103.

In support, the district court noted that House "ha[d] a history of violent and

domestic abuse, the types of crimes that put the public at risk," and that his "history

and conduct indicate[d] . . . [he] d[id] not respect the law." *Id.* That history, the

district court noted, included the following:

1) A road rage incident in November 2006 during which House threw
   bricks at the victims and also used his vehicle to strike two other
   vehicles and a person. House pleaded guilty to assault and battery
   with a dangerous weapon, larceny of a motor vehicle, and malicious
   injury and destruction of property, and was sentenced to a ten-year
   suspended sentence.

2) A domestic abuse incident in August 2008 during which House
   allegedly hit and threatened to kill his then-girlfriend (who he later
   married).

3) A domestic abuse incident in August 2011 during which House
   allegedly threatened his then-wife with a knife, also threatened to
   choke her with his shirt, and struck her multiple times when she
   attempted to call for help. This incident resulted in House pleading
   nolo contendere to one count of domestic abuse and battery in the
   presence of a minor. House received a deferred fifteen-month
   sentence.

4) The alleged sexual assault of C.Y. in March 2024 that led to the
   issuance of the search warrant in this case.

The district court also pointed out that the latter three incidents led courts to

issue protective orders against House. The court concluded that these incidents "and

their outcomes" were relevant because: (1) "they indicated" House "ha[d] been

involved in actions, behavior, and conduct, whether in criminal cases or through the

protective orders, that pose[d] a risk to public safety"; (2) despite the fact that House

6

"completed deferred sentences in the past related to the criminal matters," those deferred sentences had not "deterred [him] from criminal conduct"; and (3) even "though these cases were many years ago, [his] criminal conduct does not seem to have abated or be confined to [his] youth." *Id.* at 106.

Turning to the § 3553(a) sentencing factors, the district court concluded House's history implicated several factors, including "promoting [] respect for the law, affording specific deterrence, and protecting the public from further crimes." *Id.* Ultimately, the court concluded that "the advisory guideline range of 10 to 16 months' imprisonment" was "inadequate to reflect a sufficient sentence in this case, including but not limited to [its] concerns . . . that [his] criminal history category underrepresents [his] risk of recidivism and risk to the public." *Id.* at 110.

House argues the district court gave "improper weight" to his "prior adjudications and protective orders" in violation of U.S.S.G. § 4A1.2(e)(1). Aplt. Br. at 11. That guideline provision outlines instructions for computing a defendant's criminal history and provides, in relevant part, that any prior sentence of imprisonment exceeding thirteen months must be counted if it was "imposed within fifteen years of the defendant's commencement of the instant offense" or if it "resulted in the defendant being incarcerated during any part of such fifteen-year period." U.S.S.G. § 4A1.2(e)(1).

The government argues, and we agree, that this is not a true substantive reasonableness challenge, but rather "a claim of procedural reasonableness." Aple. Br. at 16. In any event, even if House had properly stated a substantive

reasonableness argument, we would reject it. Contrary to House's assertion, nothing in § 4A1.2(e)(1) prohibited the district court, in evaluating the § 3553(a) factors and determining the sentence to impose, from concluding that House's calculated criminal history score and category underrepresented his risk of recidivism and risk to the public. Instead, as the government correctly notes, the Guidelines expressly authorize a district court to depart upward based on an underrepresented criminal history. More specifically, the Guidelines state that "[i]f reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, an upward departure may be warranted." U.S.S.G. § 4A1.3(a)(1). "This policy statement recognizes that the criminal history score is unlikely to take into account all the variations in the seriousness of criminal history that may occur." *Id.* cmt. (backg'd). We have held that upward variances on these same grounds are consistent with the policy statement outlined in § 4A1.3(a)(1). *See United States v. Garcia*, 946 F.3d 1191, 1214 (10th Cir. 2020); *United States v. Lente*, 759 F.3d 1149, 1166–67 (10th Cir. 2014).

Here, the district court did not abuse its discretion in determining that House's criminal history score and category seriously underrepresented his risk of recidivism and risk to the public and, in turn, varying above the guidelines range on that basis. At the sentencing hearing, C.Y. testified that during her first in-person meeting with House at C.Y.'s place of business, he orally and vaginally raped her and, in doing so, intimidated her by openly displaying a firearm, verbally threatening her, and choking

8

her. Although the district court did not make any specific findings of fact after hearing C.Y.'s testimony, its consideration of the incident as part of its § 3553(a) analysis clearly indicates that it found C.Y.'s testimony credible. Further, the serious and violent nature of this incident amply supports the district court's conclusion that House's criminal history score and category seriously underrepresented his risk of recidivism and risk to the public, particularly when considered in combination with his past criminal history. *See United States v. Gieswein*, 887 F.3d 1054, 1064 (10th Cir. 2018) (affirming as substantively reasonable the district court's decision to vary upward from the guidelines range of 92 to 115 months to a 240-month sentence because it found "the particular facts" of defendant's history showed his "criminal-history category dramatically underrepresented the degree of his misconduct"); *United States v. Shaw*, 471 F.3d 1136, 1142 (10th Cir. 2006) (finding "substantial justification" for the district court's decision to impose an above-guidelines sentence because the defendant's criminal history score and category substantially underrepresented the seriousness of his criminal history).

<div align="center">IV</div>

The judgment of the district is affirmed.

<div style="margin-left: 50%;">Entered for the Court</div>

<div style="margin-left: 50%;">Nancy L. Moritz<br>Circuit Judge</div>

<div align="center">9</div>